IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MARQUISE FOSTER, *individually and on* | ) | |
| *behalf of all others similarly situated*, | ) | |
| | ) | NO. 3:19-cv-00148 |
| Plaintiff, | ) | |
| | ) | JUDGE RICHARDSON |
| v. | ) | |
| | ) | |
| SITEL OPERATING CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is Plaintiff's Motion for Conditional Certification and Notice to Putative Class Members. (Doc. No. 39, "Motion"). Defendant filed a response to the Motion, and Plaintiff replied. (Doc. Nos. 63, 68). Due to the length of time Plaintiff's Motion has been pending, the Court gave the parties an opportunity to file supplemental briefing, and they both did so. (Doc. Nos. 93, 94). For the reasons discussed below, the Motion (Doc. No. 16) will be granted.

# BACKGROUND[1]

Defendant Sitel Operating Corporation operates call centers throughout the United States and describes itself as a "leading global outsourcing provider of customer experience management with 150 offices across 25 countries." (Doc. No. 1 at ¶ 18 (quoting https://www.sitel.com/cx-outsourcing)).[2] Since March 2016, Defendant has operated at least 20 customer care facilities in the United States. (Doc. No. 63-1 at ¶ 3). Defendant's customer service representatives ("CSRs")[3] are assigned to work on specific client campaigns for Defendant's clients, which include, among others, a tax preparation software company, an international coffee house chain, an internet and cable television provider, and a home warranty provider. (*Id*. at ¶ 4, Doc. No. 63-6 at ¶ 3). At any given time, each of Defendant's customer care facilities may be operating several unique client campaigns. (Doc. No. 63-1 at ¶ 4). Defendant also employs CSRs that work from their homes

---

[1]     Unless otherwise noted, the facts set forth in this section are allegations taken from Plaintiff's Complaint (Doc. No. 1), Plaintiff's declaration (Doc. No. 40-12) and the declarations of Defendant's Human Resources Director, Mary Hagues, and Director of Operations, Jillian Bustin. (Doc. Nos. 63-1, 63-6). At the conditional certification stage, "the court accepts as true the plaintiff's allegations[.]" *Jones v. H&J Restaurants, LLC*, No. 5:19-CV-105-TBR, 2020 WL 759901, at *2 (W.D. Ky. Feb. 14, 2020) (quoting *Dominguez v. Don Pedro Rest.*, No. 2:06 cv 241, 2007 WL 271567, at *2 (N.D. Ind. Jan. 25, 2007). But the Sixth Circuit has explained that plaintiffs seeking conditional certification are subject to a "modest factual showing." *See, e.g., Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "Although some district courts have not required plaintiffs to present additional factual support beyond his or her own allegations at the conditional certification stage, . . . [t]he requirement of a "modest factual showing" necessarily requires some factual showing." *Tyler v. Taco Bell Corp.*, No. 215CV02084JPMCGC, 2016 WL 3162145, at *4 (W.D. Tenn. June 3, 2016).

        Nevertheless, the Court notes that "when determining whether Plaintiff has met [her] evidentiary burden, a court does not resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations at this first stage. *Turner v. Utiliquest, LLC*, No. 3:18-CV-00294, 2019 WL 7461197, at *3 (M.D. Tenn. July 16, 2019) (citing *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1072 (M. D. Tenn. 2015)). The allegations and facts presented in this section are used to lay out the background of this lawsuit. The allegations are generally supported by Plaintiff's evidence, and the facts taken from Defendant's proffered evidence are undisputed for purposes of this Motion.

[2]     While Defendant's website no longer includes this statement, the Court will accept the allegation as true for purposes of the Motion.

[3]     This term encompasses all of Defendant's hourly call center employees that work in customer service and took calls from customers, not merely those with the specific title "customer service representative." The Court uses the specific term "customer service representative," or "CSR," to describe these positions for the sake of brevity, and because the parties do so themselves.

("WFH agents"), rather than from one of Defendant's facilities. (Doc. No. 62-3 at ¶ 3). Like the CSRs, the WFH agents are also assigned to work on campaigns for Defendant's clients. (*Id*.).

Defendant employed Plaintiff as a CSR[4] from June 2012 to April 2017. (*Id*. at ¶ 20). Plaintiff and the putative class members' job duties consisted of answering phone calls made by Defendant's clients' customers, answering those customers' inquiries, troubleshooting on behalf of those customers, and generally assisting those customers. (*Id.* at ¶ 19). Plaintiff and the Putative class members typically worked approximately forty "on the clock" hours per week. (*Id.* ¶ 22). In addition, Plaintiff and the putative class members often worked "off-the-clock" up to six and one-half hours per week, for which they never were compensated. (*Id*. at ¶ 23).

Plaintiff and the putative class members have been compensated for less than all these hours worked, as a result of Defendant's company-wide policy and practice of requiring all call-center employees to be "call ready"—that is, to take their first phone call the moment their official shift starts each day. (*Id*. at ¶ 24). Specifically, Plaintiff and the putative class members were (and are) required to log-in to their computer programs, log-in to Defendant's programs, and ensure that each of Defendant's programs are running correctly, all of which can take up to one hour before they were (and are) able to take their first phone call, which comes in as soon as their official shift starts. (*Id.* at ¶ 25). During this start-up time, Plaintiff and the putative class members were not compensated because (and even though) they were (and are) expected to have completed this process in advance of their official start time(s). (*Id.* at ¶ 26).

On December 4, 2018, Plaintiff commenced this collective action against Defendant, pursuant to the collective action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of herself and all current and former hourly call-center employees who worked

---

[4]     Plaintiff's actual title was "technical service representative." (*See* Doc. No. 41-12 at ¶ 5).

for Defendant at any time from December 4, 2015 through the final disposition of this matter. (Doc. No. 8).[5] Plaintiff alleges that Defendant's policies and practices violated the FLSA by failing to compensate Plaintiff and the putative class members for all hours worked, and for the proper amount of overtime each workweek, on a routine and regular basis during the regular time period. (*Id.* ¶¶ 41-47). Now pending before the Court is Plaintiff's Motion for Conditional Certification, wherein Plaintiff requests this Court conditionally certify this case as a collective action pursuant to 29 U.S.C. § 216(b). (Doc. No. 39).

## LEGAL STANDARD

The FLSA provides that a collective action may be maintained against any employer by one or more employees for and on behalf of themselves and other employees similarly situated. 29 U.S.C. § 216(b). Because the FLSA requires only that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009) (abrogated on unrelated grounds by *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016)). Also, unlike class actions under Federal Rule of Civil Procedure 23, FLSA collective actions require similarly situated employees to "opt-in" to be included as plaintiffs. 29 U.S.C. § 216(b).

Although the FLSA does not define the term "similarly situated," the Sixth Circuit has noted that courts have considered the "'factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" *O'Brien*, 575 F.3d at 584 (quoting 7B Wright, Miller, & Kane, *Federal Practice and Procedure* §

---

[5] This action was originally filed in the Southern District of Texas. (Doc. No. 1). On February 14, 2019, upon joint motion, the case was transferred to the Middle District of Tennessee. (Doc. No. 25).

1807 at 497 n.65 (3d ed. 2005)) (alterations in original). "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585. But "[s]howing a 'unified policy' of violations is not required." *Id.* at 584.[6] Employees alternatively may be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 585.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (internal quotation marks and citation omitted).

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. *Benson v. Asurion Corp.*, No. 3:10-cv-526, 2010 WL 4922704, at *2 (M.D. Tenn. Nov. 29, 2010).[7] Conditional certification need only be based on a modest factual showing,

---

[6]     One district court in this circuit has emphasized that this statement is in fact the law. In *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752 (W.D. Tenn. 2011), the court stated:

> In addition, Defendants rely on *Pacheco v. Boar's Head Provisions Co.,* 671 F. Supp.2d 957 (W.D. Mich.2009), in support of their argument that a unified policy of violations is required to support certification. In *Pacheco*, the district court rejected the clear statement by the Sixth Circuit in *O'Brien* that "[s]howing a 'unified policy' of violations is not required," reasoning that this statement was merely dicta. *Id.* at 961. Despite Defendant's arguments to the contrary, the Court disagrees with *Pacheco* and sees no reason to disregard *O'Brien*.

*Id.* at 759 (citing *O'Brien*, 575 F.3d at 585).

[7]     "The burden of proof is relatively slight at this stage of the case because the court is not making a substantive determination on the basis of all the evidence but is simply adopting a procedure which permits notice to be given to other potential class members." *Turner*, 2019 WL 7461197, at *3 n.7 (citing *Frye v. Baptist Mem'l Hosp.*, No. 07-2708, 2008 WL 6653632, at * 4 (W.D. Tenn. Sept. 16, 2008)).

and district courts should use a fairly lenient standard that typically results in certification. *Comer*, 454 F.3d at 547. At the first stage, the court does not resolve factual disputes, decide substantive issues related to the merits of the case, or make credibility determinations. *Roberts v. Corrections Corp. of Am.*, No. 3:14-cv-2009, 2015 WL 3905088, at *10 (M.D. Tenn. June 25, 2015).

"[T]he certification is conditional and by no means final." *Comer*, 454 F.3d at 546. After discovery, the defendant may move for decertification of the conditional class, which triggers the second phase of the court's review. *See O'Brien*, 575 F.3d at 583. At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547.

## ANALYSIS

### I. Motion for Conditional Certification

Plaintiff seeks to conditionally certify this case as a collective action as to the following class members:

> All current and former hourly call-center employees who worked for Sitel Operating Corporation at any time within the past three years through the final disposition of this matter.

(Doc. No. 40 at 2). In support of Plaintiff's argument that she and the putative class members are similarly situated, Plaintiff produced twenty-three declarations of former and current employees of Defendant (including herself) who are putative class members. (*See* Doc. No. 41-3 through Doc. No. 41-27). Each of these declarant worked at one of nine different locations of Defendant's call centers as a CSR, or took calls while working from home as a WFH agent.[8] The declarations generally outline each declarant's job duties and describe Defendant's "policies and procedures"

---

[8] A chart outlining each of the declarants' job titles, location worked, and campaigns worked is set forth in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Conditional Certification. (Doc. No. 40 at 10-12).

that required them to be logged on to their systems and "call ready" before clocking in. (*See* Doc. No. 41-3 at ¶ 7; Doc. No. 41-9 at ¶ 7; Doc. No. 41-10 at ¶ 7; Doc. No. 41-11 at ¶ 7; Doc. No. 41-12 at ¶ 12; Doc. No. 41-13 at ¶ 7; Doc. No. 41-14 at ¶ 7; Doc. No. 41-15 at ¶ 7; Doc. No. 41-16 at ¶ 7; Doc. No. 41-17 at ¶ 7; Doc. No. 41-18 at ¶ 9; Doc. No. 41-19 at ¶ 7; Doc. No. 41-20 at ¶ 8; Doc. No. 41-21 at ¶ 7; Doc. No. 41-22 at ¶ 7; Doc. No. 41-23 at ¶ 7; Doc. No. 41-24 at ¶ 7; Doc. No. 41-25 ¶ 9.). Plaintiff argues that although Plaintiff and the other declarants may not all the same job title, and may not all have worked on the same campaign(s), "it is undisputed that all of [Defendant's] call-center employees are required to log-in to [Defendant's] computer system, open the appropriate [Defendant] programs, and interact with [Defendant's] customers on [Defendant's] behalf via telephone."[9] (Doc. No. 40 at 12). Plaintiff contends that because of this basic commonality, she is similarly situated to all CSRs and WFH agents for purposes of conditional certification. (*Id*.).

Additionally, Plaintiff filed the declarations of two supervisors who are not putative class members. These declarations, according to Plaintiff, corroborate the putative class member's declarations that they are required by Defendant, per its company-wide policy, to perform work off-the-clock. (*See* Doc. Nos. 41-26, 41-27). Specifically, Rodney Jackson and Regenia Blackwell-Blackmon averred that while employed as supervisors for Defendant, they led teams of approximately fourteen call-center employees. (*See* Doc. Nos. 41-26 at ¶ 4, 41-27 at ¶ 4). As supervisors, Mr. Jackson and Ms. Blackwell-Blackmon avowedly reported directly to the operations manager and had regular meetings with the deputy site manager for the facility and the other supervisors; during these meetings, and on an almost daily basis, the senior management for

---

[9]    Only two declarants do not list their job title as either a  "customer service representative" or "at home customer service representative." Despite their job titles, all declarants' job duties included receiving inbound calls and assisting customers.  (*See* Doc. Nos. 41-12, 41-18).

Defendant (the deputy site manager) reiterated Defendant's company policy that its call-center employees must arrive early to be "call ready" by their shift start time. (*See id.* at ¶ 5). Accordingly, Mr. Jackson and Ms. Blackwell-Blackmon allegedly relayed and implemented Defendant's policy to their teams and told them that they needed to arrive at least fifteen minutes early to ensure that they were "call ready" when their shift officially started. (*See id*).

Additionally, according to Mr. Jackson and Ms. Blackwell-Blackmon, they would review daily and weekly time reports for a performance indicator known as "variance time," meaning the length of time between when a call-center employee clocked into the time keeping system and when they actually became "call ready." (*See id.* at ¶ 6). According to Mr. Jackson and Ms. Blackwell-Blackmon, call-center employees were not permitted to have a variance time over five minutes. (*See id*). The operations managers were particularly cognizant of variance time, constantly reminding supervisors to minimize variance time to ensure it remained below the 5-minute mark. (*See id.* at ¶ 7).

Plaintiff asserts that the putative class members' twenty-three declarations, especially in light of the striking number of pre-notice opt-ins, currently more than 300, (Doc. No. 93), is more than enough evidence to support a finding that Plaintiffs and the putative class members are similarly situated for purposes of conditional certification. (Doc. No. 40 at 16).

Defendant opposes Plaintiff's Motion for Conditional Certification for two main reasons. (Doc. No. 63). First, Defendant argues that Plaintiff has not identified a single purported common policy or plan that allegedly violates the FLSA and applies to all Putative class members. (*Id.* at 11-15). Second, Defendant argues that Plaintiff's Motion should fail because the declarations provided by Plaintiff are speculative, not based on personal knowledge, and in some instances

contradict Plaintiff's allegations. (*Id.* at 15-22). The Court will explore each of Defendant's arguments in turn.

### A. Plaintiff Identified a Single Policy or Plan that Allegedly Violates the FLSA

In connection with its first argument, Defendant contends that "[c]ritically, Plaintiff has not demonstrated how the purported (unwritten) 'corporate-wide' policy allegedly requiring customer service employees to be 'call ready' before clocking in actually supersedes [Defendant's] lawful written policies which clearly and specifically require hourly [CSRs and WFH agents] to clock in prior to 'booting up tools or performing any preparatory work for the company,' and to record all time worked." (Doc. No. 63 at 11). In light of its written policies that prohibit the conduct that Plaintiff alleges violates the FLSA,[10] Defendant maintains that Plaintiff must "allege or show a common, single, illegal policy-to-violate Defendants' written timekeeping policies and training, a policy which affects all the [CSRs] [s]he purports to join in this action." (*Id.* (quoting *Gaffers v. Sitel Worldwide Corp.*, No. 3-16-cv-0128, 2016 WL 3137726, at *3 (M.D. Tenn. June 6, 2016)). Defendant argues that Plaintiff's failure to provide evidence of a "policy-to-violate" is fatal to her bid for conditional certification. (Doc. No. 63 at 15).

Plaintiff replies that this argument is devoid of merit and contravenes the purpose of the first stage of the conditional certification analysis. (Doc. No. 68 at 2). Plaintiff contends that "[b]y way of the specific allegations made in their Original Collective/Class Action Complaint and the testimony provided by twenty-five declarants, Plaintiffs have identified a nationwide corporate policy whereby Defendant's call-center employees are pressured to, and do, perform necessary services off-the-clock and without compensation." (*Id.*).

---

[10]     Defendant's written policy provides that "[n]onexempt associates may not perform any work before or after properly recording their start and end times." (Doc. No. 63-2 at 5).

The Court agrees with Plaintiff on this point. The Court finds distinguishable the cases Defendant relies on to support its argument that Plaintiff has not provided any proof of a FLSA violation that overrides Defendant's written policy, because (according to Defendant) Plaintiff has not provided evidence of a policy to violate a policy. In *Gaffers*, on which Defendant relies heavily, the plaintiff sought conditional certification based on allegations that he and the putative class members of the collective action were subject to a common policy and practice that failed to compensate them for all hours worked, specifically for time spent logging on and off of their computers. 2016 WL 3137726, at *1. In support of his argument that he and the putative class members were similarly situated, Defendant filed *only* his own declaration. *Id*. The Court denied the plaintiff's motion for conditional certification because the plaintiff failed to "allege or show a common, single, illegal policy to violate the defendants' written timekeeping policies and training, a policy which affects all the [putative class members] he purports to join in this action." *Id*. at *3. Rather than base its decision solely on the existence of the defendant's lawful written policy, the court relied on the plaintiff's failure to offer any declaration of any other employee, and the failure of the plaintiff's own declaration to show that he had personal knowledge of how any other employees "record their time, why, whether, or in what manner they were required to work off-the-clock, or what specific policies or practices required other [employees] to not be paid for all work time." *Id*.

Defendant frames *Gaffers* as "particularly instructive" because the court "analyzed allegations strikingly similar to those advanced by the Plaintiff in this matter." (Doc. No. 63 at 12). While the underlying FLSA violation allegations may be similar in nature, as both involve allegations of a defendant's failure to compensate for all time worked, the proof supplied by Plaintiff in this case is much more compelling than the proof supplied by the plaintiff in *Gaffers*,

*who only submitted his own declaration*—a fact Defendant conveniently omits from its brief in opposition. In contrast, here, Plaintiff provided declarations of twenty-five of Defendant's former or current employees that all aver that they were subject to the same company-wide policy when they were required to be "call ready" before clocking-in. Therefore, the Court finds that *Gaffers* is far from "particularly instructive" in the present case, which is factually very distinguishable.

Defendant also cites *Pacheco v. Boar's Head Provisions Co., Inc.*, 671 F. Supp. 2d 957 (E.D. Mich. 2009) and *Saleen v. Waste Management, Inc.*, No. 08–4959, 2009 WL 1664451 (D. Minn. June 15, 2009). In *Pacheco*, the court denied conditional certification after finding that the employer had a formal, written FLSA-compliant policy regarding overtime and that the plaintiffs did not come forward with sufficient evidence to demonstrate that the defendant's common practice was not to follow this written policy. 671 F. Supp. 2d at 962. However, the court in *Pacheco* did not follow the traditional two-stage certification process, because the parties had already engaged in substantial discovery regarding class certification. *Id*. at 960. Thus, the court based its certification determination on a heightened evidentiary standard. *Id*. But no such discovery has taken place here, so *Pacheco* is inapposite. Thus, as have other courts, this court declines to follow *Pacheco* and instead will use the traditional two stage certification process. *E.g., Tommey v. Computer Scis. Corp.*, No. 11-CV-2214-EFM-GLR, 2013 WL 1304186, at *5 (D. Kan. Mar. 27, 2013).

Additionally, to the extent that Defendant relies on *Pacheco* for the proposition that a unified policy of violations is required, the reliance is unwarranted because *Pacheco* "rejected the clear statement by the Sixth Circuit in *O'Brien* that '[s]howing a "unified policy" of violations is not required,' reasoning that this statement was merely dicta." *Lindberg*, 761 F. Supp. 2d at 759 (citing *Pacheco*, 671 F. Supp. 2d at 961). This Court will not disregard *O'Brien*, which held that

employees may also be similarly situated, even absent a unified policy of violations, if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." 575 F.3d at 585.

In *Saleen*, drivers of trash-collection vehicles moved for conditional certification of an FLSA collective action, alleging that the defendant violated the FLSA by failing to pay overtime wages. 2009 WL 1664451 at *1. The court analyzed 112 declarations of opt-in plaintiffs and found the content of those declarations "too varied for the Court to conclude that there [was] a single decision, policy, or plan" necessary for conditional certification, because the declarants offered a "myriad of reasons" for why they were not properly compensated. *Id*. at *5. These same concerns are not present here where the putative class members all aver that they went uncompensated for some hours worked due to one reason: Defendant's company-wide policy that they must be call ready before clocking in. Thus, *Saleen* is distinguishable.

Defendant points to its written policy as proof that Defendant has not alleged a FLSA violation, however, Plaintiff has proffered twenty-five declarations that reflect that Defendant does not follow its (allegedly) FLSA-compliant policy and instead does commit FLSA violations. This is enough for conditional certification. "Defendant cannot defeat conditional certification, or require a higher burden of proof, merely by pointing to a written policy that [Defendant] complied with the FLSA. *Hamric v. True N. Holdings, Inc.*, No. 1:16-CV-01216, 2016 WL 3912482, at *2 (N.D. Ohio July 20, 2016); *see also Lindberg*, 761 F. Supp. 2d at 759-60 (conditionally certifying class where plaintiffs asserted that defendant routinely ignored FLSA-compliant written policy on automatic meal-break deductions). Defendant's allegedly FLSA-compliant policy conceivably could support Defendant's position on the merits, or perhaps even in a potential motion for

decertification. But it fails to overcome Plaintiff's showing of FLSA violations committed against similarly situated employees, whatever Defendant's ostensible policy may have been.

"A unified plan, policy, or scheme need not be proved at the notice stage; rather, the existence of a plan or policy is probative evidence [but not an absolute prerequisite to showing] that similarly situated plaintiffs exist." *Wilson v. Etech Glob. Servs. LLC*, No. 3:18-cv-0787-B, 2019 WL 2471753, at *4 (N.D. Tex. June 13, 2019). The Court concludes that Plaintiff has identified a policy or plan that allegedly violates the FLSA and applies to all the putative class members, because Plaintiff alleges, and has made a subsequent evidentiary showing, that Defendant systematically does not compensate CSRs and WFH agents for some of the time they are required to work.[11] Accordingly, it is immaterial at this stage that Defendant allegedly has a FLSA-compliant written policy.

### B. The Court Will Consider Plaintiff's Supporting Declarations

Defendant argues that the declarations provided by Plaintiff "are rife with speculation, and include numerous allegations which do not appear to be based on the declarants' personal knowledge." (Doc. No. 63 at 15). Defendant contends that the Court should disregard these declarations, because "[s]peculative statements offered in connection with a [conditional class certification] motion may not form a basis of conditional certification." (*Id.* (quoting *Rutledge v. Claypool Elec., Inc.*, No. 2:12-cv-159, 2012 WL 6593936, at *6 (S.D. Ohio Dec. 17, 2012)). Specifically, Defendant takes issue with Plaintiff's averment that she "knows" that the allegedly illegal policy applies to all call center employees at all of Defendant's locations because

---

[11]      Additionally, as the Court has taken pains to emphasize, Plaintiff was not even required to demonstrate a "unified policy" of violations, because employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. Thus, the Court holds that Plaintiff has adduced evidence of "common theories of [Defendant's] statutory violations," and therefore has established a FLSA violation for purposes of conditional certification on this alternative basis.

"[Defendant] regularly made it clear that its policies were made at the corporate level." (*Id*. at 17 (citing Doc. No. 41-12 at ¶ 12)). Defendant argues that this averment should be disregarded because Plaintiff does not explain "how [Defendant] made it clear to her that this particular alleged policy was 'made at the corporate level,' or who within the company made that representation to her" and Plaintiff has worked at only one location, and therefore, Plaintiff does not establish her basis of knowledge. (*Id*.). Similarly, Defendant asserts that the declarations of the putative class members "contain the same type of speculative allegations . . . [that] they 'know' this purported policy applies to all call center employees at all of [Defendant's] locations" without sufficiently stating a basis for such personal knowledge. (*Id*. at 18-19).

In opposition, Plaintiff argues that the declarations "are detailed, fact-specific, based on personal knowledge, and provide supporting information providing the basis of knowledge." (Doc. No. 68 at 5). Plaintiff contends that the information provided in the declarations "is the type of information courts in this district and division regularly rely on in granting certification." (*Id*. (citing *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1074 (M.D. Tenn. 2015); *Beasley v. Over Easy Mgmt., Inc.*, No. 1:14-cv-366, 2016 WL 11503028, at *4 (E.D. Tenn. Apr. 8, 2016)). In *Bradford*, which the Court finds instructive, the defendant opposed the court's consideration of the declarations presented in support of the plaintiff's motion for conditional certification because "the declarants have not established *how* they obtained their knowledge concerning whether they or others were on or off the clock at any given time or whether they spent more than twenty percent of their time on side work." *Bradford*, 137 F. Supp. 3d at 1073. The court disagreed and found that the declarations contained "simple statements of fact based on personal knowledge or experience for which the declarants are not required to lay a foundation in their declarations." *Id*. The court explained that

> This is not a trial. The attestation that the declarant or others were not "clocked in," for example, or the declarants' personal judgment as to the percentage of time that they or others spent doing side work, is sufficient for purposes of their declarations. Whether or not these statements are credible and properly supported is ultimately a question of fact and is inappropriate to consider at this stage of the case. [The defendant] will be able to challenge these witnesses at the appropriate time.

*Id*. at 1073-74.

The Court also finds *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363 (E.D. Tenn. 2006) helpful. In *White*, the plaintiff submitted declarations from current and former employees of the defendant. 236 F.R.D. at 367. The defendant moved to exclude from consideration statements in three of the affidavits that, the defendant argued, were not based on the declarants' personal knowledge. *Id*. at 368. Specifically, the defendant objected to the declarants' statements that the "policy of not compensating employees for travel within a 75-mile radius is company wide." *Id*. at 369. The court concluded that, although the referenced paragraphs did not "explicitly set forth the circumstances under which the affiants came to know this information," the court could reasonably infer from the other evidence submitted that the three affiants, as employees of the defendant, "would have learned during the normal course of their employment how the company operates and what the company's policies were" and, therefore, that the statements were "based on personal knowledge[.]" *Id*.

Here, Plaintiff alleges she knows "that other Call-Center Employees were required to work off the clock just as [she] did" and "[t]hey were subject to the same corporate policies as [she] was that required them to log in to their computers before their shifts had started." (Doc. No. 41-12 at ¶ 13). Additionally, the putative class members in their declarations aver that they "know" the "call ready" policy applied to all call center employees at all of Defendant's locations because "[Defendant] regularly made it clear that its policies were made at the corporate level." (*See e.g.*, Doc. No. 41-3 at ¶¶ 7, 14; Doc. No. 41-9 at ¶¶ 7, 17; Doc. No. 41-10 at ¶¶ 7, 17; Doc. No. 41-11

at ¶¶ 7, 15; Doc. No. 41-13 at ¶¶ 7, 17; Doc. No. 41-22 at ¶¶ 7, 17; Doc. No. 41-23 at ¶¶ 7, 15;

Doc. No. 41-17 at ¶¶ 7, 17). Although Plaintiff does not explain how she was aware that other

CSRs had to log in to their computers prior to their shift, nor do the putative class members explain

how Defendant "made it clear" that the call ready policy applied at all of its locations, it is

reasonable to infer at this stage of the proceedings that the declarants "would have learned during

the normal course of their employment how the company operates and what the company's

policies were[.]" *White*, 236 F.R.D. at 369; *see also Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754,

764 (N.D. Tex. 2013) ("[I]t is reasonable to infer at this stage that [plaintiffs] had personal

knowledge of the employment conditions of other Service Coordinators based upon their own

observations and experiences during their employment."); *Lujan v. Cabana Mgmt., Inc.*, 284

F.R.D. 50, 65 (E.D.N.Y. 2012) ("[I]t is reasonable to infer that . . . employees would have first-

hand knowledge of [their employer's] employee policies and practices by virtue of their tenure

[with employer]."); *Reyes v. AT & T Mobility Servs. LLC*, 759 F. Supp. 2d 1328, 1334 (S.D. Fla.

2010) ("[I]t is reasonable to assume at this stage that the affiants would have learned what other

Retail Account Executives did during the normal course of their employment, such as during

discussions with other employees, visiting other stores, reviewing emails from co-workers or

reviewing material distributed by Defendant.").

Additionally, Defendant's concerns involving Plaintiff's lack of knowledge of company

operations outside of the single location that she works are alleviated by the twenty-four other

declarants who work at nine different brick and motor locations, in addition to those that work

from home, throughout the United States. These declarants' respective averments are based on

their personal knowledge of their own work circumstances Thus, it is reasonable to infer that,

based on their positions, duties, and experience in a variety of Defendant's locations, the multiple

declarants' personal knowledge of Defendant's call-ready policy collectively reveals a company-wide policy that requires employees to be "call ready" prior to clocking in for their shift.

Further, as in *Bradford*, the Court stresses that "[w]hether or not these statements are credible and properly supported is ultimately a question of fact and is inappropriate to consider at this stage of the case." *Bradford*, 137 F. Supp. 3d at 1074. Defendant will be able to challenge these witnesses at the appropriate time; among other things, at a potential trial Defendant may object to testimony of any of them under Rule 602 on the grounds that there is insufficient evidence that the witness has personal knowledge of the matter(s) about which their testimony is offered. Accordingly, the Court rejects Defendant's request that the Court disregard Plaintiff's supporting declarations based on a lack of personal knowledge.[12]

### C. Plaintiff is Similarly Situated to the Putative Class Members

At this stage, the Court is tasked only with evaluating whether Plaintiff has alleged an FLSA-violating policy and shown that members of the putative class are similarly situated with respect to these violations. The Court concludes that Plaintiff has adduced sufficient evidence under this stage's "fairly lenient" standard to show that Defendant's practices violate its own policy, and that these practices affect all the putative class members. From the declarations, the Court notes that although the putative class members may have different job titles, or work on different campaigns, or even work in different environments (a brick and mortar location versus work from home), the class members share similar characteristics in that their job involves taking calls from customers and responding to their complaints, concerns, or issues. Significantly, each

---

[12]    Additionally, to the extent Defendant argues that the declarations of the two supervisors should be disregarded (*see* Doc. No. 63 at 19-21), the Court rejects that argument for these same reasons. Furthermore, Defendant's argument that the supervisors' testimony somehow conflicts with that of the putative class members (which the Court agrees with Plaintiff is a mischaracterization of the supervisors' testimony), is a credibility issue that should not be resolved at this stage of the litigation. *Crosby*, 348 F. Supp. 3d at 747.

declarant avers that he or she is subject to Defendant's policy that all CSRs and WFH agents should have their computer systems prepared (*i.e.*, "call ready") before clocking in and regardless of the clock in procedure used. (*See* Doc. No. 41-3 at ¶ 7; Doc. No. 41-9 at ¶ 7; Doc. No. 41-10 at ¶ 7; Doc. No. 41-11 at ¶ 7; Doc. No. 41-12 at ¶ 12; Doc. No. 41-13 at ¶ 7; Doc. No. 41-14 at ¶ 7; Doc. No. 41-15 at ¶ 7; Doc. No. 41-16 at ¶ 7; Doc. No. 41-17 at ¶ 7; Doc. No. 41-18 at ¶ 9; Doc. No. 41-19 at ¶ 7; Doc. No. 41-20 at ¶ 8; Doc. No. 41-21 at ¶ 7; Doc. No. 41-22 at ¶ 7; Doc. No. 41-23 at ¶ 7; Doc. No. 41-24 at ¶ 7; Doc. No. 41-25 ¶ 9.). The different methods by which putative class members are able to clock-in[13] does not change the fact that Defendant's alleged policy applies to them. Further, the declarants aver that they know this policy applies company wide.

These declarations from twenty-five current and former employees from nine different locations and work-at-home, are sufficient to show that all putative class members were subject to the same company-wide policy and practice as Plaintiff regardless of their location.[14] *Compare Crosby*, 348 F. Supp. 3d at 749-50 (certifying a class across 800 stores based on the consistent declarations from plaintiffs who had worked at eight stores); *with Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-674, 2017 WL 3437564, at *4 (S.D. Ohio Aug. 17, 2017) (denying nationwide

---

[13]     Defendant's declarants aver that a new clock-in system was implemented in 2015 that allowed CSRs to "clock in" to work using timekeeping kiosks located near the entrance of the production floors at the facilities. (*Id.* at ¶¶ 6-7). The kiosks are comprised of standalone computer terminals exclusively used by CSRs to record their time worked. (*Id.*). At the conclusion of a shift, CSRs "clock out" using these same terminals. (*Id.* at ¶ 7). Prior to 2018, the method in which WFH agents recorded their time depended on which campaign the particular WFH agent was assigned to. (*Id.* at ¶ 6). The different methods of clocking in for WFH agents involved the use of either a telephone or a computer application. (*Id.*). In early 2018, Defendant implemented a new option for WFH agents to record their time—*i.e.*, a Kronos application that WFH agents can access through their cell phones; however, WFH agents are still able to clock in by calling in or using the previously mentioned methods. (*Id.* at ¶ 7).

[14]     In its supplemental briefing (Doc. No. 94), Defendant cites this Court's opinion in *Powers v. Blessed HomeCare, LLC*, No. 3:18-CV-01029, 2019 WL 4450514 (M.D. Tenn. Sept. 17, 2019), where the Court held that the plaintiff had not carried her burden to show that she and the members of the purported class were similarly situated. 2019 WL 4450514, at *3. There, the plaintiff submitted only her own declaration and otherwise failed to allege any facts to show how the alleged illegal policy was applied to and affected her. *Id.* at *3. Thus, as with other cases upon which Defendant relies, the case at hand is entirely distinguishable.

conditional certification where the three declarations supplied information about employees at only one call center). Furthermore, it is noteworthy that the putative class member declarants are not confined to one geographic region, but instead represent a nationwide sampling of putative class members.[15]

Therefore, the Court finds that the allegations in the Complaint, together with the declarations, are sufficient to satisfy Plaintiff's burden of making a modest factual showing that Plaintiff and the putative class members are similarly situated. *See Comer*, 454 F.3d at 546-47 ("'The plaintiff must show only that his position is similar, not identical, to the positions held by the putative class members.'") (quoting *Pritchard v. Dent Wizard Int'l Corp.,* 210 F.R.D. 591, 594 (S.D. Ohio 2002)). "If discovery later shows the claims in this case to be so individualized as to render a collective action unmanageable, [Defendant] may move to decertify the collective action at the second stage of the certification proceedings." *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 WL 4667497, at *8 (S.D. Ohio Sept. 25, 2019).

In conclusion, at this initial stage, Plaintiff has sufficiently established that she is similarly situated to the putative class members to proceed collectively through discovery. Certifying such a class at this stage is hardly a novel step; as a district court in this circuit has explained, "the vast majority of United States District Courts have routinely granted conditional certification to call center employees alleging similar 'off-the-clock' FLSA violations." *Fisher v. Mich. Bell Tele. Co.*, 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009) (collecting cases). Accordingly, Plaintiff's Motion for Conditional Class Certification will be granted, and the following class will be certified for this collective action: "all current and former hourly call-center employees who worked for Sitel

---

[15]     The declarants are employed at Defendant's offices in the following locations: Amarillo, Texas; Albuquerque, New Mexico; Corning, New York; Ocala, Florida; Lake City, Florida; Las Cruces, New Mexico; Painted Post, New York; Pompano Beach, Florida; San Angelo, Texas; and Spartanburg, South Carolina.

Operating Corporation at any time during the last three years through the final disposition of this matter." (Doc. No. 39 at 1).

## II. Notice to Putative Class Members

Regarding the notice that will be issued to the putative class members, Plaintiff asks the Court to: (1) order Defendants to produce to Plaintiffs' counsel the contact information (including the names, addresses, telephone numbers, e-mail addresses, employee identification numbers, dates of birth, dates of employment with corresponding locations of employment, and the last four digits of security numbers for each putative class member; (2) approve the form and content of Plaintiff's proposed judicial notice and authorize a reminder notice; (3) order that the notice be sent to all putative class members via First Class Mail and e-mail, and allow the hiring of a third-party administration company for use at Plaintiff's discretion; (4) authorize the putative class members to execute their consent-to-join forms electronically; and (5) authorize a 60-day notice period for the putative class members to join the case. (Doc. No. 40 at 24).

Although a plaintiff in an FLSA action is not required to affirmatively seek the district court's approval in sending out notices, a district court may exercise its broad discretion under FLSA to facilitate notice to potential collective action plaintiffs. *See Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 169 (1989); *Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 185 n. 6 (M.D. Pa. 2008) ("District courts, however, have discretion to 'facilitat[e] notice to potential plaintiffs' of the pending collective action.") (citation omitted)). The Supreme Court has explained that "[b]y monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Hoffman–LaRoche*, 493 U.S. 165 at 172.

Defendant has requested (in the event that the Court grants the Motion, which it will as explained above) the opportunity to meet and confer with Plaintiff regarding the proposed notice, propose an alternative notice, or if necessary, separately argue the propriety of any unresolved

issues involving notice. The Court will grant Defendant's request. As will be noted in the Order accompanying this Memorandum Opinion, the Court will direct the parties to meet and confer regarding the substance of the notice, and the notice and consent protocol, and submit a joint report to the Court no later than fourteen days after the date of the accompanying Order. If the parties cannot agree on a protocol, or the language of the notice, then by that same date (1) Plaintiffs shall file their proposed notice and consent protocol, and (2) Defendant shall separately file specific objections as to points of disagreement. If this occurs, Plaintiff may respond to Defendant's objections within five days. The Court will consider extending this time frame if requested, especially in light of the current COVID-19 pandemic.

Although Defendant in its response opposes two aspects of Plaintiff's requested relief regarding notice procedures (*i.e.*, the supplying of certain categories of information and the posting of a reminder notice), Defendant does not indicate whether it opposes, or otherwise respond to, other aspects of Plaintiff's request (*i.e.*, whether to approve a third party administrator, the appropriateness of a sixty-day notice period, the availability of electronic consent to join forms, and the proper means of dissemination). Thus, the Court will defer ruling on the two areas Defendant has briefed until the parties have had an opportunity to meet and confer regarding the other aspects. Additionally, the Court will defer setting a timeline for Defendants to identify potential class members until after the parties have had an opportunity to meet and confer regarding notice procedures, and the categories of information that should be provided by Defendant. Any issues the parties are not able to resolve shall be brought to the court's attention via briefing filed by the date(s) outlined above.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Conditional Class Certification will be **GRANTED**. In addition, the parties shall meet and confer regarding the substance of the notice and the notice and consent protocol within the timeline set forth in this Memorandum and the accompanying Order.

An appropriate Order will be entered.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE