IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARQUISE FOSTER, *et al.* ) | |
| ) | |
| Plaintiffs, ) | NO. 3:19-cv-00148 |
| ) | |
| v. ) | JUDGE RICHARDSON |
| ) | |
| SITEL OPERATING CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This case was originally filed (in the southern District of Texas, before being transferred to this Court) as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, against Defendant for unpaid wages, including unpaid overtime. Then, in an Order entered on April 29, 2022, (Doc. 412, "Order"), the assigned Magistrate Judge granted "Plaintiff's Opposed Motion for Leave to File First Amended Collective/Class Action Complaint," (Doc. No. 401, "Plaintiff's motion to amend"),[1] which sought leave to file a proposed amended complaint (Doc. No. 401-2) that in pertinent part added a class-action claim under the law of each of 15 different states. Based on the Order, "Plaintiffs' First Amended Collective Action/Class Action Complaint" (Doc. No. 413, "First Amended Complaint"), was filed on the docket just as it had been proposed and stands at present as the operative complaint in this case, pending the instant memorandum opinion and order.

---

[1] There was only a single Plaintiff, Marquise Foster, in this action as originally filed. Over time, thousands of opt-in Plaintiffs joined this action, but even after this occurred, at times filings (like Doc. No. 401) still referred to "Plaintiff" in the singular. Herein, the Court generally uses the term "Plaintiffs," in the plural, though at times (in particular when quoting the parties) it uses the singular.

## THE PENDING ALTERNATIVE MOTIONS

Pending before the Court is "Defendants [sic] Motion for Review of Non-Dispositive Order of Magistrate Judge or, in the Alternative, Motion to Partially Dismiss." (Doc. No. 415, "Motion").[2] Via the Motion, Defendant objects to the Order and requests that the Court reject the Order (a request that, if granted, essentially would entail the striking of the First Amended Complaint). Also in the Motion, Defendant asks the Court in the alternative to dismiss the 15 state-court class actions pursuant to Fed. R. Civ. 12(b)(1). The Court will refer to the first of these two maneuvers as "Defendant's objection to the Order" and to the second of these as "Defendant's alternative motion to dismiss." As discussed further in a footnote below, the second of these is also made separately in "Defendant's Motion to Dismiss" (Doc. No. 414) although the argument in support of such motion is made only in the Motion. The Court thus hereinafter will treat Defendant's alternative motion to dismiss as technically being made only in Doc. No. 414, though references to the argument in support of such motion will necessarily be to the Motion.

Defendant summarizes the basis of its two alternative requests as follows:

> . . . Plaintiff's proposed Amended Complaint seeks to add 15 state law class action claims of varied statutory and common law theories, and those claims will predominate the sole federal claim at issue in this matter. For example, Plaintiff's proposed amendments would expand this action from 7,092 opt-in plaintiffs to

---

[2] The argument in support of the Motion for review of the Order is included in the Motion itself, rather than in a separately filed memorandum. This was contrary both to Local Rule 72.01(a), which requires a separately filed memorandum of law to accompanying a motion for review of an order of a magistrate judge regarding non-dispositive matters, and to Local Rule 7.01(a)(2), which requires a separately filed memorandum in a support of a motion as a general matter (which would include Defendant's alternative motion to partially dismiss). As for Defendant's alternative motion to dismiss, it is included in a document separate from the document in which the argument in support of that request was made; that is, the request was made by itself in "Defendant's Motion to Dismiss," with the argument in support of that request being made in a separate document (Doc. No. 415). The problem is that the latter document was not styled as a memorandum in support of the motion (Doc. No. 414); indeed, it was not styled as a memorandum at all, but solely as a motion. The upshot is that Defendant's alternative motion to dismiss was presented duplicatively, once in each of two different document styled as a "motion," although one of these served in part as a memorandum in support of such motion.
    The Court will consider Defendant's argument despite the procedural deficiency in its presentation, Defendant is cautioned to comply with the Local Rule, and avoid any unnecessary confusion, in the future.

more than 69,000 putative class members. In other words, the state tail will undoubtedly wag the federal dog.

(Doc. No. 415 at 1). Based on these core assertions, as noted above Defendant requests rejection of the Order or, alternatively, dismissal of the 15 state-law class actions for lack of subject-matter pursuant to Fed. R. Civ. P. 12(b)(1).

Plaintiffs filed a response in opposition to Defendant's objection to the Order (Doc. No. 416, "Response to Defendant's objection,"). According to Plaintiffs, Defendant has not shown that the Order is clearly erroneous or contrary law as required to sustain Defendant's objection to the Order. Plaintiffs filed a separate response to Defendant's alternative motion to dismiss (Doc. No. 417, "Response to Defendant's alternative motion"), arguing that supplemental jurisdiction exists over the state-law class actions and that there is insufficient reason for the Court to refuse to exercise it.

The Court will first address Defendant's objection to the order, then address Defendant's alternative motion to dismiss.

<u>SUBSTANCE OF AMENDMENTS TO COMPLAINT REFLECTED IN THE FIRST AMENDED COMPLAINT THAT THE MAGISTRATE JUDGE GRANTED LEAVE TO FILE</u>

Describing to the Magistrate Judge the manner in which the then-proposed First Amended Complaint (Doc. No. 401-2) amends the original Complaint, Plaintiffs wrote:

> Plaintiffs seek leave to amend the complaint to add named Plaintiffs and state law claims for unpaid straight time, in addition to the existing unpaid overtime claims. While Plaintiffs seek to include new state-law claims for unpaid straight time in their amended complaint, the underlying facts and supporting evidence remain unchanged.
>
> Plaintiffs also seek leave to amend the complaint to add additional factual details regarding the existing overtime claim and additional state law claims that did not become wholly apparent until more opt-in Plaintiffs were able to provide additional evidence. In support of both the existing overtime claims and the newly sought straight time claims, Plaintiffs seek to include additional policies and practices [Defendant] used to deny compensation for all hours worked by Plaintiffs.

> The underlying allegations of [Defendant]'s liability, however, remains unchanged (the non-payment of owed wages).

(Doc. No. 401-1 at 5). As noted above, promptly upon the Magistrate Judge's issuance of the Order, the First Amended Complaint was filed just as it was proposed.

DISCUSSION

I. **The objection to the Order is overruled, and the Order is affirmed**

This Court, not to mention myriad others, has been known to deny as moot, where appropriate, objections to an order of a magistrate judges on a non-dispositive matter. *See, e.g.*, *Shabazz v. Schofield*, No. 3:13-CV-00091, 2014 WL 6605504, at *2 (M.D. Tenn. Nov. 19, 2014) (finding "a motion for review and an objection under Rule 72(a) of the Federal Rules of Civil Procedure to a non-dispositive order entered by the magistrate judge" to "have been rendered moot," and therefore denying the motion for review and overruling the objection in the motion for review, respectively, "without further discussion"). The Court concludes that in light of its disposition of Defendant's alternative motion to dismiss as set forth below, Defendant's objection to the Order is rendered moot and should be denied on those grounds.

Alternatively, if the Court were to decide Defendant's objection to the Order on the merits, it would overrule the objection. And it would do so substantially for the reasons set forth in the Response to Defendant's objection, which are persuasive and reflected in the discussion immediately below.

Pursuant to Fed. R. Civ. P. 72(a), the Court may modify or set aside any part of a Magistrate Judge's Order on a non-dispositive matter that is clearly erroneous or is contrary to law. The "clearly erroneous" standard applies only to factual findings, while legal conclusions are reviewed under the "contrary to law" standard. *Norfolk Cnty Ret. Sys. v. Cmty. Health Sys., Inc.*, No. 3:11-cv-00433, 2019 U.S. Dist. LEXIS 112291, 2019 WL 3003647, at * 1 (M.D. Tenn. Apr. 19, 2019);

*Equal Emp't Opportunity Comm'n v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009). This standard is deferential, and mere disagreement with the Magistrate Judge and/or an assertion that the Magistrate Judge should have ruled differently does not rise to a clear error of fact or a decision contrary to law. *See Shabazz v. Schofield*, No. 3:13-CV-00091, 2014 U.S. Dist. LEXIS 163642, 2014 WL 6605504, at *1 (M.D. Tenn. Nov. 19, 2014) ("The Court is not empowered to reverse the magistrate judge's finding simply because this Court would have decided the issue differently."). When examining legal conclusions under the contrary to law standard, a court may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent. *Vanderbilt Univ. v. Scholastic, Inc.*, 321 F. Supp. 3d 830, 832-33 (M.D. Tenn. 2018).

As background, the decision reflected in the Order essentially is that Plaintiffs had adequately established grounds for obtaining leave to amend the complaint under Rule 15(a)(2) of the Federal Rules of Civil Procedure. The thrust of the Response to Defendant's objection is that Defendant has not actually shown that the Order is the result of (or even reflects in any way) either a factual finding that is clearly erroneous or a legal conclusion that contradicts or ignores applicable precepts of law. The Court agrees with Plaintiffs in this regard. At best, Defendant establishes that the Magistrate Judge *could have* viewed certain facts differently or reached a different decision under Rule 15(a)(2). But the Court simply does not see where Defendant has established that the Magistrate Judge got any facts wrong, got any law wrong, or ignored any law.

Nor does the Court see where Defendant has shown that the Magistrate Judge's ultimate decision to grant leave to amend under Rule 15(a)(2)—a decision that, though not one of pure law, is certainly not one of fact and thus surely falls under the "legal conclusion" category for purposes of assigning a standard of review for the district court—was contrary to law. The requirements of

Rule 15(a)(2) are "modest," *Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, 833 F.3d 680, 691 (6th Cir. 2016), and the decision whether to grant leave to amend under Rule 15(a)(2) is a discretionary one. *Jauch v. Menard, Inc.*, No. 3:22-CV-205, 2022 WL 16734659, at *2 (S.D. Ohio Nov. 7, 2022) ("The grant or denial of leave to amend is within the discretion of the trial court[.]" (quoting *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995)). Thus, it tends to be difficult to show that a decision to grant such leave is plain old wrong (as required to sustain Defendant's objection here), rather than merely questionable (as would be insufficient to sustain Defendant's objection here).

Taking its best shot at showing something reversibly wrong with what the Magistrate Judge did in the Order, Defendant complaints that the Magistrate Judge (expressly) skipped over Defendant's argument made in opposing Plaintiffs' motion to amend, (Doc. No. 407 at 3-11), that this Court would lack subject-matter jurisdiction over the state-law class actions Plaintiffs proposed to add in the then-proposed First Amended Complaint. Plaintiffs counter that Defendant has not shown that in deciding under Rule 15(a)(2) whether to grant leave to amend, the Magistrate Judge was required to address Defendant's jurisdictional argument; Plaintiffs seem to concede that the Magistrate Judge would have been required to address a "futility" argument—*i.e.,* that leave to amend should be denied because the claims to be added would be futile in that they were bound to fail anyway—but disputes that Defendant made a futility argument before the Magistrate Judge. (Doc. 416 at 4-6).

To that, Defendant essentially responds that it did make a futility argument in substance, even if it did not use the magic word "futile" (or any variant thereof). (Doc. No. 418 at 2). Defendant may have a point here, but ultimately it is one that does not carry the day. At best, Defendant has been able to point out that its argument *could* (or at best, *arguably should*) have

been taken by the Magistrate Judge as a futility argument. But this is not necessarily to say that by not doing so, the Magistrate Judge committed reversible error. In the view of the undersigned, a Magistrate Judge is not culpable of making a decision (or otherwise acting) contrary to law by deciding a Rule 15(a)(2) issue without reference to a non-movant's alleged futility argument, unless the non-movant identifies the argument specifically as a futility argument; by failing to do so, the non-movant risks confusing the magistrate judge as to how the argument is actually relevant to the Rule 15(a)(2) motion. Such confusion clearly existed here, and the undersigned is not inclined to put this at the feet of the Magistrate Judge and say that this was his error.

In short, Defendant's objection to the Order is hereby overruled primarily as moot and alternatively as substantively without merit, and relatedly the Order is affirmed.. As the Order is hereby affirmed, the Court notes that technically the disposition of the Motion is that it is denied in full.[3]

II. **Pursuant to 28 U.S.C.. § 1367(c), the Court declines to exercise supplemental jurisdiction over the state-law claims (class actions) in the First Amended Complaint[4]**

As suggested above, to say that leave to allow the filing of the First Amended Complaint was proper is not necessarily to say that a challenge to this Court's supplemental jurisdiction cannot now be made or, if made, would be without merit. To the contrary, as indicated above, a challenge to this Court's jurisdiction played no part in the decision reflected in the Order, and so sustaining a challenge to this Court's jurisdiction at this time would not be inconsistent with the Order. For this reason, and because there are no procedural or other impediments to this Court's

---

[3] As noted above, the Motion also contains argument in support of Defendant's alternative motion to dismiss, but the Court is treating that motion as technically made only in "Defendant's Motion to Dismiss" (Doc. No. 414), and treating the Motion as technically including only the motion for review of the Order.

[4] Each and every one of the state-law claims in the First Amended Complaint is a state-law class action. Herein, the Court will refer to these claims as "state-law class actions," with the understanding that this case does not involve any state-law claims beyond the state-court class actions.

consideration of Defendant's alternative motion to dismiss, the Court turns to it, assessing the validity of its challenge to this Court's jurisdiction.

Plaintiffs plead in the First Amended Complaint, "[]on information and belief," that the Court has original jurisdiction over the state-law class actions "pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711–1715 ("CAFA")." (Doc. No. 413 ¶ 45). But in response to the alternative motion to dismiss, Plaintiffs do not invoke this CAFA-based theory of original jurisdiction; Plaintiffs, who hedged their bets from the outset about whether the theory was valid, appear to have abandoned the theory in favor of sole reliance on supplemental (formerly known as "pendent") jurisdiction.

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C.A. § 1367(a). To be clear, despite what the first phrase of this subsection may seem to indicate, if a district court declines to exercise discretion under subsection (c), that does not mean than the district court did not have supplemental jurisdiction under subsection (a), *i.e.*, does not mean that in retrospect the district court never had supplemental jurisdiction in the first place. . This is because "whether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercise that jurisdiction." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). So if a court declines to exercise jurisdiction under Section 1367(c), it means that the district court, having actually (or at least *arguendo*) had supplemental jurisdiction, in its discretion declined to exercise it. *Id.*; *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) ("[T]o say that the terms of § 1367(a) authorize the district courts to exercise supplemental

jurisdiction over state law claims . . . does not mean that the jurisdiction *must* be exercised in all cases. Our decisions have established that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right[.]" (internal quotation marks omitted)). In *Int'l Coll. Of Surgeons*, the Supreme Court discussed at some length the nature and extent of the district court's discretion in this regard:

> [D]istrict courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons, [*United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726–727 (1966)]. See also *Cohill,* 484 U.S., at 350, 108 S. Ct., at 619 ("As articulated by *Gibbs,* the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values"). Accordingly, we have indicated that "district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.,* at 357, 108 S. Ct., at 623.
>
> The supplemental jurisdiction statute codifies these principles. After establishing that supplemental jurisdiction encompasses "other claims" in the same case or controversy as a claim within the district courts' original jurisdiction, § 1367(a), the statute confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise:
>
> > "(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> >
> > "(1) the claim raises a novel or complex issue of State law,
> >
> > "(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> >
> > "(3) the district court has dismissed all claims over which it has original jurisdiction, or
> >
> > "(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).
>
> Depending on a host of factors, then—including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may decline to exercise jurisdiction over supplemental state law claims. The statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case,

and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Cohill, supra,* at 350, 108 S. Ct., at 619.

*Id.* at 172–73.

It is clear that Defendant's alternative motion to dismiss is based on some kind of challenge to supplemental jurisdiction under Section 1367. Less clear is whether the challenge is to the *existence*, or instead to the propriety of the *exercise,* of supplemental jurisdiction. For instance, Defendant muddies the water when it states in the Motion that "[b]ecause the Plaintiffs have not met the requirements for this Court's exercise of supplemental jurisdiction, Defendant is entitled to dismissal of those claims with prejudice." (Doc. No. 414 at 2). Setting aside for the moment Defendant's unexplained (and inexplicable) assertion that the requested dismissal should be with prejudice,[5] the statement is confusing because it is framed in terms of the *exercise* of supplemental jurisdiction (suggesting perhaps that Defendant is assuming the existence of jurisdiction at least *arguendo*), but also asserts that Plaintiffs have not met "the requirements" for such—when in fact there are no "requirements" for the Court's exercise of supplemental jurisdiction where it does exist; if the requirements for the existence of supplemental jurisdiction are satisfied, then there are no additional "requirements" for the exercise of such jurisdiction.[6]

As another example, Defendant (incorrectly citing Rule 12(a)(1) instead of 12(b)(1), likely as the result of a typographical error) frames its alternative request as one "to dismiss the [state-law class actions] because the Court *should decline* subject matter jurisdiction over these claims." (Doc. No. 415 at 5) (emphasis added). But the express basis for a Rule 12(b)(1) motion is a *lack* of subject-matter jurisdiction, not the existence of grounds sufficient to support a discretionary

---

[5] In Defendant's only reference to whether the requested dismissal should be with prejudice or without prejudice, Defendant refers only to dismissal without prejudice (Doc. No. 415 at 7) (quoting *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003), as amended (Nov. 14, 2003) (quoting *Gibbs*, 383 U.S. at 726)).

[6] Instead, the district court in its discretion can choose not to exercise supplemental jurisdiction even though it exists.

declination of subject-matter jurisdiction (such as supplemental jurisdiction under Section 1367(a)) that actually is *not* lacking. The suggestion thus seems to be that supplemental jurisdiction is lacking, *i.e.,* does not exist. But in fairness to Defendant, "[t]here is . . . authority for treating dismissals pursuant to Section 1367(c) [as well as dismissals pursuant to Section 1367(a)] as Rule 12(b)(1) dismissals." *Am. Soc. of Consultant Pharmacists v. Patla*, 138 F. Supp. 2d 1062, 1075 n.6 (N.D. Ill. 2001).

This all tends to obfuscate whether Defendant is: (i) arguing that supplemental jurisdiction does not exist under Section 1367(a); (ii) conceding that supplemental jurisdiction exists under Section 1367(a) but arguing that supplemental jurisdiction should be declined under Section 1367(c); or (iii) or arguing both (in the alternative).

The Court concludes that Defendant actually is arguing both. By its references to an alleged "lack" of jurisdiction and to the requirements of 28 U.S.C. § 1367(a), (Doc. No. 415 at 5, 6-7), Defendant raises the specter that supplemental jurisdiction does not exist. Elsewhere, though, Defendant clearly speaks in terms of the court "declin[ing]" either "jurisdiction" or, in some places, the "exercise[e]" of "jurisdiction." (*id.* at 5, 6, 9, 10, 11, 13, and 14). And in two places, Defendant cites Section 1367(c)—in one place paragraph (2) thereof, and in the other place paragraph (4) thereof. (*Id.* at 6, 7). So Defendant appears to posit alternatively that jurisdiction should be declined under Section 1367(c) even if it does exist under Section 1367(a).

The Court will assume *arguendo* that supplemental jurisdiction does exist under Section 1367(a). The question becomes whether the Court concludes that in its discretion, it should decline jurisdiction under Section 1367(c)(2), Section 1367(c)(4), or both. The Court need not address Section 13667(c)(4), because it has little trouble concluding that declination of supplemental

jurisdiction over the state-law class actions is both authorized by Section 1367(c)(2) and is entirely warranted.

As noted above, under that paragraph of Section 1367(c), the Court may decline supplemental jurisdiction over a state-law claim if "*the claim* substantially predominates over the claim or claims over which the district court has original jurisdiction," 28 U.S.C. § 1367(c)(2). Of course, here the Court is not dealing with "the" claim (suggesting a *single* claim), but rather with *15 different* state-law claims (state-law class actions). Theoretically, the Court perhaps is called upon to address the appropriateness of declination separately as to each of the 15 claims. But neither side here so contends and, to the contrary, treats the claims as a group for purposes of this analysis. The Court does likewise, believing that efficiency and common sense dictate that the Court decide whether declination is warranted as to all 15 state-law class actions collectively.

The parties each cite various cases (most of them non-binding, which is understandable) to support their respective positions as to whether the state-law class actions "substantial predominate" over the FLSA claim. In response, the Court will speak plainly: in the absence of binding case law on point to contrary, the Court is extremely skeptical of the notion that where a case involves a federal claim involving 7,092 plaintiffs (almost all of whom are opt-ins to an FLSA collective action), plus 15 class actions brought under the laws of 15 different states involving a total of at least 69,738 putative class members,[7] the state claims do not substantially predominate. To speak even more bluntly, no amount of non-binding judicial gloss on the words "substantially predominates" is likely to convince the Court of what it knows from experience: under these circumstances, the 15 state-class actions are exceptionally likely to do what cannot reasonably be described as something other than "substantial predominate" the federal claim. The Court's work

---

[7] These figures are provided by Defendant, (Doc. No. 415 at 9), and not refuted by Plaintiffs.

would be indeed be "predominated" by dealing with claims under the laws of 15 different states, and class certification motions for 15 different state-specific groups of putative class members. And the Court would be confronted with a total number of plaintiffs (albeit mostly absent plaintiffs) for the state-law class actions that would dwarf the number of plaintiffs in the FLSA action.

According to Plaintiffs, "'[p]redomination under section 1367(c)(2) relates to the type of claim'" and where the "'state law claims essentially replicate the FLSA claims,'" as is the case here, "'they plainly do not predominate." (Doc. No. 417 (quoting *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 425 (D.C. Cir. 2006))). The Court finds *Lindsay* factually distinguishable because (contrary to Plaintiffs' entirely conclusory statement, *id.* at 8) the state-law class actions here absolutely do not "essentially replicate the FLSA claims." The Court agrees with Defendant when it states:

> . . . . [T]he state-law statutory and quasi-contractual claims are factually and legally distinct from Plaintiffs' FLSA overtime claim because they seek to expand the scope of recovery from merely overtime wages to include "straight time" wages and other forms of relief. Furthermore, the legal requirements and evidence required for recovery under the FLSA substantially differ from those required under the various state laws at issue in the Amended Complaint. The purported addition of these claims clearly overwhelm the single FLSA allegation because they differ in kind and nature form those originally pursued by Plaintiff in this action

(Doc. No. 415 at 7-8). Indeed, Plaintiffs take pains in the First Amended Complaint to set out the basis for recovery under particular principles of the law of each implicated state. And, in making the point that particular state-law class actions are not preempted by the FLSA, Plaintiffs repeatedly note that such state-law class actions are independent . . . . of [the class representative's] claims for overtime wages pursuant to the FLSA." *(E.g.*, Doc. No. 413 at ¶ 445).

And to the extent *Lindsay* properly could be deemed factually on point, the Court would decline to rely on this non-binding authority as fodder to refute what the Court can see with its

own eyes: a case with one FLSA claim and 15 different state-court class actions is "substantially predominate[d]" by the state-court class actions.

Plaintiffs also rely on the notion, which the Court accepts, that an (opt-in) FLSA collective action and an (opt-out) Rule 23 class action can co-exist in the same case. (Doc. No. 417 at 6). But the issue here is not whether a FLSA collective action can co-exist with "a" Rule 23 class action; nor is it whether a FLSA collective action can co-exist with a few Rule 23 class actions. Nor is it even whether a few Rule 23 class actions substantially predominate over the FLSA collective action. It is whether 15 different Rule 23 class actions, each brought under the law of a different state, substantially predominate over the FLSA collective action.

Plaintiffs assert (albeit not necessarily in connection with Section 1367(c)(2)) that "[t]he exercise of supplemental jurisdiction over related state law claims provides great efficiencies and economies to litigants and the courts." (*Id.* at 10). That may be true in some cases, but the Court does not see that it is true here. In particular, the Court does not perceive great efficiencies and economies in a Tennessee federal court delving into the law not only of the state of Tennessee, but also of fourteen other states. This point dovetails with the analysis under Section 1367(c)(2) in particular because the need for the Court to delve into the unfamiliar law of more than a dozen states portends not only inefficiencies, but also an expenditure of judicial resources and attention that ultimately makes the state-law class actions here "substantially predominate" over the FLSA claim.

Plaintiffs also warn against the Court placing much emphasis on raw numbers (of federal claims versus state claims, for example). (*Id.* at 7-8). The warning is apt, but the Court is heeding it; the Court realizes that sheer numbers (of claims, for example) are not outcome determinative, and its determination is not the result of numbers *per se*. But the numbers certainly and logically

are relevant to whether state-law claims substantially predominate over the federal claim. As one federal court in this district has noted, "Although there appears to be no definitive test to determine whether state law predominates over federal claims, *courts have considered such factors as whether they outnumber the federal law claims*; whether the claims are distinct; and whether the state-law claims involve proof that is not needed to establish the federal law claims." (Doc. No. 415 at 7 (quoting *Williamson v. Recovery Ltd. P'ship*, No. C2-06-292, 2009 WL 649841, at *9 (S.D. Ohio Mar. 11, 2009))) (emphasis added). State-law claims do not necessarily predominate over federal claims merely because they (or their associated plaintiffs) are more numerous than the federal claims (or their associated plaintiffs). But here, the 15 state-law class actions do substantially predominate—not because of the numbers as such, but rather because of what those numbers portend in terms of the Court's relative total workload and attention as between the sole federal claim and the state-law class actions.

Plaintiffs do not identify a single example where a slew of state-law claims as substantial as fifteen state-law class actions was deemed not to substantially predominate a single federal claim. The Court however, has identified cases that articulate exactly what the Court is perceiving in this case. "The Court concludes that Plaintiffs' state-law claims would substantially expand the scope of this case beyond that necessary and relevant to the federal claims. Thus, the state-law claims would substantially predominate over the federal claims. The state-law claims also raise . . . issues of state law." *Davis v. Wayne Cnty. Election Comm'n*, No. 20-11819, 2020 WL 3833041, at *2 (E.D. Mich. July 8, 2020). "Here, were the Court to retain jurisdiction, it would be required to delve into numerous purely state law issues. . . . Such statutory interpretation is better left to state courts[.]"[8] *White v. City of Cleveland*, No. 1:17-CV-01165, 2020 WL 7640932, at *24 (N.D.

---

[8] The observation here in *White* may be associated more closely with the ground for declining to exercise supplemental jurisdiction that is set forth in 28 U.S.C. § 1367(c)(4), but the Court believes that the observation is relevant to why

Ohio Dec. 23, 2020). It is true that the Court cannot yet say that the purely state-law issues would be novel or complex. But the Court also cannot accept what Plaintiffs assert in the most conclusory fashion in attempting to distinguish this case from *De Ascencio v. Tyson Foods*, 342 F.3d 301 (3rd Cir. 2013)[9]—that no such novel or complex state law issues are present and that contract questions are either wholly inapplicable or easily resolved on a class basis. All the Court can say at this juncture is that the 15 state-court class actions preage a large number of issues of state law.

All in all, the Court must conclude that Plaintiffs resorted to hyperbole in their insistence, and their attempts to back up its claim that, the state-law class actions "'plainly do not predominate.'" (Doc. No 417 at 7 (quoting *Lindsay* 448 F.3d at 425)). The (alleged) truth of this claim could hardly be less "plain." To the contrary, the Court finds on balance that the opposite is true: the state-law class action here "substantially predominate." As a result, declination of supplemental jurisdiction is authorized under Section 1367(c)(4), and the Court in its discretion finds such declination warranted for the reasons indicated above. Accordingly, the state-law class actions are dismissed without prejudice. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 522 (6th Cir. 2007) (noting, where the district court's dismissal of the state law claims was "based on the district court's discretion not to exercise supplemental jurisdiction over those claims," that such "dismissal is of course without prejudice to state court claims" being brought in state court).

---

the state-court class actions substantially predominate over the lone FLSA claim here within the meaning of Section 1367(c)(2)—namely, the need to delve into purely state-law issues for 15 different states is exactly the kind of thing that makes the state-law class actions substantially predominate.

[9] In *De Ascencio*, the Third Circuit held that the district court should not have exercised supplemental jurisdiction over state-law wage claims for because, *inter alia*, the state claims involved two novel and complex questions of state [Pennsylvania] law and individual contract questions "might conceivably predominate over the issues common to the claims of FLSA plaintiffs." 342 F.3d at 311.

CONCLUSION

Defendant's Motion to Dismiss (Doc. No. 414), which constitutes a motion to dismiss the state-law-class action claims set forth in the First Amended Complaint, is **GRANTED**, and therefore each and every one of those claims is dismissed without prejudice. The Motion (Doc. No. 415) accordingly is **DENIED** as moot or, alternatively, on the merits.

Nothing herein serves to strike from the First Amended Complaint allegations *not* made in furtherance of the (hereby-dismissed) state-law class actions that were added by the First Amended Complaint.[10]

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[10] To reiterate, Plaintiff has described such allegations as follows: "additional [alleged] factual details regarding the existing overtime claim and additional state law claims that did not become wholly apparent until more opt-in Plaintiffs were able to provide additional evidence" (Doc. No. 401-1 at 5).